1
2
3
4
5
6
7
8
IN THE UNITED STATES DISTRICT COURT

9
FOR THE EASTERN DISTRICT OF CALIFORNIA

10
PATRICIA A. MCCOLM,

11
        Plaintiff,               No. CIV S-06-2707 MCE EFB PS

12
   vs.

13
RESTORATION GROUP, INC., et al.,      ORDER AND FINDINGS AND
                                RECOMMENDATIONS

14
        Defendants.

15
_____/

16
     This action, in which plaintiff is proceeding *in propria persona*, was referred to the

17
undersigned under Local Rule 72-302(c)(21), pursuant to 28 U.S.C. § 636(b)(1).  Having ruled

18
on plaintiff's motion to disqualify the undersigned, the court now issues the following findings

19
and recommendations regarding defendant Sandra Johnson's motion to dismiss, in which all

20
other defendants have joined.  That motion, and plaintiff's opposition thereto, was heard by the

21
undersigned on March 14, 2007.

22
**I.    BACKGROUND**

23
     This action is proceeding on plaintiff's complaint, filed November 29, 2006.  Plaintiff's

24
twenty-six page complaint alleges eight "counts," or causes of action, against defendants.

25
Plaintiff's first cause of action is for "possession of personal property or its value and damages

26
for its wrongful detention [Cal. Civ. Code sections 667, 3379, 3380, 1712; CCP section 667]."

1

1    Counts two through four are for "civil conspiracy, fraud, deceit, breach of agreement [California

2    Civil Code section 1709, 1710, 330, 3333, 3249]."  Plaintiff styles count five as "civil conspiracy

3    with client, Cal. Civil Code 1714.10(c)."  Lastly, counts six through eight allege violations of the

4    Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, the

5    Hobbs Act, 18 U.S.C. § 1951, and Cal. Penal Code §§ 518, *et seq*. (extortion and attempted

6    extortion).

7    **A.    Factual Background**

8    Plaintiff names as defendants Sandra Johnson, Robert M. Cronic, Michele Cronic,

9    Restoration Group, Inc., and Restoration Group Inc. dba Purofirst Disaster and Reconstruction

10    (the latter two referred to collectively herein as "Purofirst").[1]  Plaintiff claims that these

11    defendants constitute an enterprise within the meaning of RICO and that they conspired to take

12    plaintiff's personal property and charge her in excess of the originally agreed upon service fees.

13    Her claims arise from events related to an agreement to clean and restore certain personal

14    property following a fire at plaintiff's father's residence in Redding, California.  Plaintiff alleges

15    that on November 23, 2003, a fire occurred at the home of her father, George L. McColm, over

16    whom she has durable power of attorney.  *See* Compl., at ¶¶ 10, 13.  Plaintiff alleges that various

17    items of her property were at her father's house when the fire occurred, and that Purofirst –

18    through its owner, defendant Robert M. Cronic ("Cronic") – induced her to enter into an

19    ////

20    ////

21

22    [1] Plaintiff also names "Purofirst Disaster and Reconstruction" as a defendant.  The attorney representing Purofirst and Robert and Michele Cronic – Mark D. Norcross – avers that "Purofirst Disaster and Reconstruction" has not existed since 2001, long prior to the incidents

23    alleged in the complaint.  *See* Response to Plaintiff's Ex Parte Motion for Order Requiring Clerk to Enter Default per Prior Application, at 1:21-24.  It appears that plaintiff's naming of this

24    allegedly non-existent defendant has no bearing on her claims or the court's analysis thereof, since she has also named as defendants the existing Purofirst entities and the individuals

25    associated with them, both of which have appeared in this action.  In any event, as set forth herein, the court finds that plaintiff has failed to state a federal cause of action against any

26    defendant.

1  agreement to remove and clean her personal property so as to prevent fire damage.[2]  *Id.*, at ¶¶ 10,

2  17, 80.  Plaintiff characterizes the agreement that she signed as "fraudulent" and "void," *id.*, at

3  ¶¶ 75, 80, while at the same time claiming that Purofirst failed to honor various terms

4  thereunder, including plaintiff's alleged right to immediate return of her property upon demand.

5  *Id.*, at ¶ 80.  She also argues that certain storage fees for which she was later billed were not

6  authorized under the terms of the agreement.  *Id.*, at ¶¶ 89, 90.  Plaintiff makes numerous other

7  allegations regarding her dissatisfaction with Purofirst's services, including defendant Cronic's

8  alleged failure to provide estimates, his allegedly incorrect representation that plaintiff's

9  insurance would pay for Purofirst's services, and his alleged misrepresentations regarding the

10  cost of such services.  *Id.*, at ¶¶ 19, 21, 27, 32.

11        Plaintiff alleges that after she received an estimate of costs on December 30, 2003, she

12  "rejected the estimate and canceled the service authorization in its entirety. . . ."  *Id.*, at ¶ 33.  She

13  further alleges that she received invoices from Purofirst (although issued under a slightly

14  different name), in February, March and April of 2004, which she refused to pay.  *Id.*, at ¶ 38.

15  Plaintiff characterizes defendant Cronic's attempts to collect payment for Purofirst's services as

16  "extortion" in violation of the Hobbs Act and California Penal Code §§ 518, *et seq.*  *Id.*, at ¶ 99;

17  12:4-5.  Apparently undaunted by defendant's alleged acts of extortion, plaintiff went to the

18  Purofirst facility in June 2004 with the intent of retrieving her personal property.   However,

19  plaintiff alleges that defendant Cronic, on advice of counsel (i.e., defendant Sandra Johnson),

20  refused to release the property to plaintiff until she paid the outstanding invoices.  *Id.*, at ¶¶ 55-

21  57.

22  ////

23  ////

24  _____

25  [2]  It appears that the agreement also authorized certain repairs to the fire-damaged home
   of plaintiff's father, as well as the "pack out" and cleaning of various items of his personal
26  property.  *See* Memorandum of Points and Authorities in Support of Motion to Dismiss
   Complaint ("Defendant's Brief"), at 1:7-9; 3:1-5; Compl., at ¶¶ 10, 69.

1    Eventually, defendant Cronic caused a mechanic's lien, which plaintiff characterizes in

2    the complaint as "fraudulent," to be recorded against plaintiff's father's house.  *Id.*, at ¶ 46.

3    Through his attorney, Sandra Johnson, defendant Cronic then filed a lien foreclosure action

4    against George McColm, which is apparently still pending in Shasta County Superior Court.  *See*

5    Defendant's Brief, at 1:14-15.  Plaintiff alleges that defendant Johnson's communications with

6    plaintiff and her father prior to initiating the foreclosure action were "harassing" and undertaken

7    solely for Ms. Johnson's "personal financial gain."  Compl., at ¶¶ 50-52.  More specifically,

8    plaintiff alleges that the demand letters sent by defendant Johnson on behalf of Purofirst inflated

9    the amount allegedly owed by "unlawfully claiming storage costs not authorized in the

10   documents signed by plaintiff."  *Id.*, at ¶¶ 89-90.   Indeed, plaintiff characterizes Ms. Johnson's

11   communications on behalf of her client as extortion, and describes the foreclosure action

12   instituted by Johnson in July of 2004 as "frivolous" and an "abuse of the judicial system."  *Id.,* at

13   ¶¶ 53, 62.

14   Plaintiff characterizes this chain of events as a "scheme" and a "conspiracy" which she

15   alleges is "continuing" by virtue of defendant Purofirst's continued retention of plaintiff's

16   personal property.  *Id.*, at ¶¶ 75, 77, 78.  Plaintiff characterizes the service authorization form she

17   signed as "erroneous" and alleges that Purofirst was operating with an "expired contractor's

18   license name and number."  *Id.*, at ¶ 79.  She claims that defendants' "refusal to return the

19   personal property absent plaintiff's payment of money . . . is not only a conversion, it is a

20   criminal act of extortion in furtherance of the RICO scheme involved in this complaint . . . ."  *Id.,*

21   at ¶ 92.  Plaintiff further describes defendant Johnson's initiation of the foreclosure proceedings

22   as "part of the attorney-client scheme to manipulate and misuse the legal system by filing

23   frivolous causes [*sic*] to extort monies from her clients' victims, the elderly, disabled home

24   owners being bilked by the unscrupulous so-called contractors."  *Id.*, at ¶ 94.

25   ////

26   ////

**B.     Procedural Background**

Before the court was able to reach the merits of defendant's motion to dismiss, it first had to address various requests and filings by plaintiff, including a motion to disqualify the undersigned, filed on March 14, 2007.  The court also delayed hearing on the motion to dismiss by granting plaintiff additional time to file an opposition.

The motion to dismiss addressed herein was filed by defendant Sandra Johnson on January 25, 2007, pursuant to Rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.  The other defendants have joined in the motion.

As a threshold matter, the Rule 12(b)(6) motion must be construed as a motion for judgment on the pleadings under Rule 12(c).  Although a Rule 12(b)(6) motion filed after an answer is technically untimely, Rule 12(h)(2) preserves the defense of failure to state a claim through the time of trial on the merits, and further provides that such a defense may be raised by a motion for judgment on the pleadings-- i.e., pursuant to Rule 12(c).  *See Delta Truck & Tractor v. Navistar Int'l Transportation Corp.*, 833 F. Supp. 587, 588 (W.D. La. 1993) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990)).  Since Rule 12(c) serves in such instances merely as a vehicle to allow the procedural defense of failure to state a claim to be raised after the pleadings, the same legal standard applied under Rule 12(b)(6) is applied to Rule 12(c) motions.  *Delta Truck*, 833 F. Supp. at 588.  On the other hand, where the defense offered under Rule 12(b) previously had been included in the answer, a number of courts have treated a post-answer motion under Rule 12(b)(6) as timely.  *See e.g., Gerakaris v. Champagne*, 913 F. Supp. 646, 650-51 (D. Mass. 1996) (defendants preserved  Rule 12(b) motion by stating it in answer as an affirmative defense); *Doolittle v. Ruffo*, 882 F. Supp. 1247, 1257 n. 9 (N.D.N.Y. 1994).  In any event, the timing requirement customarily has been treated as a mere technicality.  5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004), at 221.  Moreover, "a trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim."  *Wong v. Bell*, 642

1  F.2d 359, 361 (9th Cir. 1981).  Because defendants have filed answers to the complaint, the court

2  construes defendant's Rule 12(b)(6) motion as one for judgment on the pleadings made pursuant

3  to Fed. R. Civ. P. 12(c).

4       As discussed herein, plaintiff's complaint fails to state a federal cause of action, and

5  because no other basis for federal jurisdiction appears in the complaint, the court recommends

6  against exercising supplemental jurisdiction over plaintiff's remaining state law claims.  28

7  U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Schneider v.*

8  *TRW, Inc.*, 938 F.2d 986, 993-94 (9th Cir. 1991).

9       **C.    Defendant's Request for Judicial Notice**

10       In support of defendant Johnson's motion to dismiss, her attorney, Philip S. Ward, has

11  submitted a declaration in which he has asked the court to take judicial notice of a number of

12  items, including a copy of the file-endorsed lien foreclosure complaint filed in Shasta County

13  Superior Court, and what appears to be several items related to plaintiff's litigation history in

14  cases other than this one.

15       The party requesting judicial notice bears the burden of persuading the court that the

16  particular fact is not reasonably subject to dispute and is capable of immediate and accurate

17  determination by resort to a source whose accuracy cannot reasonably be questioned and

18  supplying the court with the source material needed to determine whether the request is justified.

19  *In re Tyrone F. Conner Corp., Inc.*, 140 B.R. 771, 781-82 (E.D. Cal. 1992); Fed. R. Evid.

20  201(b).

21       Defendant Johnson has attached some seventy-plus pages related to plaintiff's purported

22  status as a vexatious litigant in other courts.  While it appears that this defendant seeks to use this

23  information to discount plaintiff's claims and her invocation of federal jurisdiction, the court

24  finds such information immaterial to the Rule 12  motion currently before it.  Accordingly, the

25  court declines to take judicial notice of the documents submitted by defendant Johnson, and does

26  not and has not considered them in making these findings and recommendations.

1    **II.    ANALYSIS**

2        **A.      Rule 12(b)(6) Standard**

3            Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint should only be dismissed for failure to

4    state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can

5    prove no set of facts in support of the claim or claims that would entitle him to relief. *Hishon v.*

6    *Spalding*, 467 U.S. 69, 74 (1984) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)); *Palmer v.*

7    *Roosevelt Lake Log Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir. 1981).  Dismissal may be

8    based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to

9    support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th

10   Cir. 1990).  In reviewing a complaint under this standard, the court must accept as true the

11   allegations of the complaint. *Hosp. Bldg. Co. v. Rex. Hosp. Trs.*, 425 U.S. 738, 740 (1976);

12   *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984).  The court construes

13   the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor.

14   *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In a case

15   where plaintiff is proceeding pro se, the court has an obligation to construe the pleadings

16   liberally. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the

17   court's liberal interpretation of a pro se complaint may not supply essential elements of a claim

18   that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of*

19   *Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Furthermore, "[t]he court is not required to

20   accept legal conclusions cast in the form of factual allegations if those conclusions cannot

21   reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752,

22   754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted

23   deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

24       **B.      Plaintiff's Federal Claims and Jurisdiction**

25           Plaintiff alleges that this case is properly before the court on federal question jurisdiction

26   pursuant to 28 U.S.C. § 1331.  Federal question jurisdiction requires that the complaint (1) arise

under a federal law or the U. S. Constitution, (2) allege a "case or controversy" within the meaning of Article III, § 2 of the U. S. Constitution, or (3) be authorized by a federal statute that both regulates a specific subject matter and confers federal jurisdiction. *Baker v. Carr*, 369 U.S. 186, 198 (1962).

Plaintiff premises her invocation of federal question jurisdiction on two federal statutes: (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, and (2) the Hobbs Act, 18 U.S.C. § 1951. *See* Compl., ¶¶ 97-105. The Hobbs Act is a criminal statute and does not create a private right of action. *WSB Electric Co. v. Rank & File Committee to Stop 2-Gate System*, 103 F.R.D. 417, 419 (N.D. Cal. 1984); *Wisdom v First Midwest Bank*, 167 F.3d 402, 408-09 (8th Cir. 1999). Rather, plaintiff relies on that statute to allege the "predicate acts" element of her RICO claim.

To state a civil claim for violation of RICO, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiff's business or property. *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1086 (9th Cir. 2002).

Defendants urge dismissal of plaintiff's RICO claim based on plaintiff's inability to allege these necessary elements. Defendants further request dismissal of the entire action pursuant to Rule 12(b)(1), because absent the RICO claim, no federal cause of action exists, and only state law claims remain.[3]

Indeed, after careful review of the complaint, the court concludes that plaintiff has attempted, unsuccessfully, to conflate simple state law contract and fraud claims involving California residents into a federal RICO action. More specifically, plaintiff has failed to allege criminal "predicate acts" and "continuity" required to establish a "pattern of racketeering activity."

---

[3] As discussed herein, the court finds that plaintiff has failed to state a federal cause of action and therefore recommends against exercising supplemental jurisdiction over the remaining state law claims. This recommendation is premised on 28 U.S.C. § 1367(c), rather than Rule 12(b)(1).

1      A "pattern of racketeering activity" requires the commission of at least two acts of

2  racketeering (i.e., predicate acts) within a ten year period.  *H.J. Inc. v. Northwestern Bell*

3  *Telephone Co.*, 492 U.S. 229, 232 (1989).  "Racketeering activity" is defined under the RICO

4  Act to mean "any act or threat involving" specified state-law crimes, any "act" indictable under

5  various specified federal statutes, and certain federal "offenses."  *Id.* at 232 (quoting 18 U.S.C.

6  § 1961(1)).

7      More specifically, section 1961(1) defines "racketeering activity" as "any act or threat

8  involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene

9  matter, or dealing in a controlled substance or listed chemical, which is chargeable under State

10  law and punishable by imprisonment for more than one year; [or] any act which is indictable

11  under any of the following provisions of title 18, United States Code."  18 U.S.C. § 1961(1).

12      Here, plaintiff has alleged that defendants violated the Hobbs Act, 18 U.S.C. § 1951,

13  which prohibits interference with interstate commerce by threats of violence, including extortion.

14  While section 1961(1) includes violations of the Hobbs Act in its definition of "racketeering

15  activity," plaintiff has failed to allege any other separate and distinct criminal, predicate act on

16  the part of defendants, nor can she.  The factual allegations detailed in the complaint clearly

17  demonstrate that his claim consists of a contract dispute over repairs which plaintiff is seeking to

18  characterize as a RICO claim.  Plaintiff's allegations regarding defendants' alleged violations of

19  the California Business and Professions Code do not constitute criminal violations covered under

20  section 1961.[4]  The same is true with regard to plaintiff's allegations regarding various violations

21  of the California Civil Code.  Plaintiff does invoke provisions of the California Penal Code

22  relating to extortion – Cal. Pen. Code § 518 (definition of extortion), § 519 (use of fear to extort),

23

24      [4] Plaintiff alleges that defendants violated Cal. Bus. & Prof. Code §§ 7110 (disregard or
violation of statutes by contractors); 7115.5 (failure to comply with rules and regulations
25  applicable to contractors); 7117.5 (acting as a contractor under a suspended license); and 7159
(requirements for home improvement contracts).  *See* Compl., at ¶¶14-27;12:14-17.  None of
26  these statutes provides for criminal liability within the meaning of RICO.

9

1  and § 524 (attempts to extort, punishable for not more than a year) – but these appear to relate to

2  the very same acts of extortion covered by plaintiff's Hobbs Act allegations (i.e., defendants'

3  demands for payment of services).

4       Finally, plaintiff's vague and conclusory allegations that defendants committed mail

5  and/or wire fraud are entirely unsupported by any factual allegation.  Likewise, plaintiff makes

6  vague and conclusory allegations regarding defendants' "theft" of her property (i.e., retention

7  thereof pending payment).  However, vague and conclusory allegations are insufficient to state a

8  claim under RICO.[5]  *Howard v. America Online, Inc.*, 208 F.3d 741, 750 (9th Cir. 2000)

9  (dismissing RICO claims for plaintiff's failure to demonstrate continuity).

10       Even assuming plaintiff's allegations regarding defendants' extortion were sufficient to

11  establish the requisite "predicate acts" for a RICO claim, plaintiff has failed to establish the

12  requisite "pattern," or continuity, required under the Act.  While two predicate acts are required

13  under the Act, they are not necessarily sufficient to establish a "pattern."  *Turner v. Cook*, 362

14  F.3d 1219, 1229 (9th Cir. 2004) (citing *Northwestern Bell Telephone*, 492 U.S. at 237).

15       "[T]o show a pattern of racketeering activity, a RICO plaintiff must 'show that the

16  racketeering predicates are related, and that they amount to or pose a threat of continued criminal

17  activity.'"  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (quoting

18  *Northwestern Bell Telephone*, 492 U.S. at 239)).  "Predicates are related if they have the same or

19  similar purposes, results, participants, victims, or methods of commission, or otherwise are

20  interrelated by distinguishing characteristics and are not isolated."  *Id.,* at 1535 (internal

21  quotations omitted).  "Continuity is demonstrated if the illegal conduct poses a threat of

22  continued criminal activity, such as when the illegal conduct is 'a regular way of conducting [a]

23  defendant's ongoing legitimate business.'"  *Id.* (quoting *Northwestern Bell Telephone*, 492 U.S.

---

24       [5]  It is apparent from the face of the complaint that plaintiff simply disputes the

25  defendants' resort to state law and procedures regarding contractor liens.  Making a conclusory
   allegation that this process is "theft" does not turn this state law dispute into a federal RICO

26  case.

1   at 239 at 243).  Predicate acts extending over a few weeks or months and threatening no future

2   criminal conduct do not satisfy this requirement.  *Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir.

3   2004).

4           The events plaintiff complains of can be summarized in two parts: first, plaintiff alleges

5   that in November 2003, defendant Cronic preyed on plaintiff's fears regarding fire damage to her

6   property and used deceit to induce her to sign the service agreement; second, plaintiff alleges

7   that defendants' efforts to enforce the contract and collect payment from plaintiff (starting

8   around February 2004 and culminating in the commencement of the July 2004 foreclosure

9   action) constituted "extortion" in violation of the Hobbs Act and California Penal Code §§ 518,

10   *et seq*.

11           Plaintiff does not clarify what occurred between the filing of the foreclosure action in

12   state court and her filing of this action on November 29, 2006.  The only continuity plaintiff

13   alleges is defendants' "continued wrongful possession of plaintiff's personal property."  Compl.,

14   at ¶ 78.

15           The allegations are insufficient to support a claim under RICO.  Even assuming that

16   plaintiff's allegations regarding "extortion" qualify as the two requisite predicate acts, plaintiff

17   has made no allegation that such "illegal conduct poses a threat of continued criminal activity."

18   *Sever,* 978 F.2d at 1535.  Plaintiff's allegations concern a single contract, executed in Redding,

19   California, between California residents, and identify only plaintiff, and arguably her father, as

20   victims.  Nothing in the complaint indicates that defendants' allegedly criminal conduct with

21   regard to that isolated contract is likely to continue into the future.  Indeed, the Ninth Circuit has

22   held that RICO should not "apply to a single, isolated transaction" such as this.  *Medallion*

23   *Television Enters. v. SelecTV of Cal*., 833 F.2d 1360, 1365 (9th Cir. 1987) (plaintiff could not

24   maintain a RICO action where, although two predicate acts were alleged, the allegations

25   concerned a single fraudulent inducement to enter a contract; once the parties entered into the

26   contract, the fraud, if indeed it was fraud, was complete).

1    Here, plaintiff's allegations concern events arising from a single contract, and plaintiff's

2    dissatisfaction with defendants' services performed (or not) thereunder.  These events occurred

3    over an eight to nine month period, and culminated in defendants' filing of a foreclosure action

4    in state court.  Although the outcome of those state court proceedings is not entirely clear,

5    Purofirst's resort to judicial process does not constitute the kind of wrongful use of force or

6    threats contemplated under RICO.  *See Royce Int'l Broadcasting Corp. v. Field*, 2000 U.S. Dist.

7    LEXIS 2369, at * 14 (N.D. Cal. Feb. 22, 2000) ("[R]esort to the judicial process to resolve a

8    contractual dispute does not constitute the kind of wrongful use of force or threats contemplated

9    by the federal RICO statute.") (citing *Eastern Railroad Presidents Conference v. Noerr Motor*

10   *Freight, Inc.*, 365 U.S. 127 (1961)).  Indeed, defendants' resort to judicial process undermines,

11   rather than supports, any alleged continuation of the "criminal activity."

12   Moreover, "predicate acts designed to bring about a single event" pose no threat of

13   continuity.  *Sever*, 978 F.2d at 1536; *see also Medallion Television Enters.*, 833 F.2d at 1364.

14   "When . . . a complaint explicitly presents a distinct and non-reoccurring scheme with a built-in

15   termination point and provides no indication that the perpetrators have engaged or will engage in

16   similar misconduct, the complaint does not sufficiently allege continuity for § 1962(c) purposes

17   even if the purported scheme takes several years to unfold, involves a variety of criminal acts,

18   and targets more than one victim."  *Gamboa v. Velez*, 457 F.3d 703, 709-710 (7th Cir. 2006).

19   Here, plaintiff makes no allegation that defendants have engaged or will engage in

20   misconduct similar to that alleged with regard to her contract.  Further, the "predicate acts" of

21   alleged "extortion" were aimed at bringing about a single event – i.e., achieving plaintiff's

22   payment of the money allegedly owed under the contract.  Indeed, the alleged events took place

23   over a short period of time and involved very few people, i.e., those involved with the execution

24   and enforcement of the contract.  Even assuming these actions constituted a scheme to defraud

25   plaintiff and her father, they have a natural and "built-in termination point."  Indeed, any number

26   of natural conclusions to this dispute can be contemplated: plaintiff could pay the money

allegedly owed; she could pay a compromised settlement portion thereof; she could sue for fraud and breach of contract in state court; defendants could do likewise; etc.  Plaintiff has made no allegation showing that this simple contract dispute poses a threat of continued criminal activity.

In accordance with the foregoing, the undersigned finds that plaintiff has failed to state a claim under RICO and that only state law claims remain in her complaint.  The court also finds that amendment would be futile.  *Lopez v. Smith*, 203 F.3d 1122, 1128 (9th Cir. 2000) (dismissal of a pro se complaint for failure to state a claim is proper where amendment would be futile).  Accordingly, the court recommends that plaintiff's RICO claim be dismissed pursuant to Rule 12(b)(6), and that the remaining state law claims be dismissed. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Schneider v. TRW, Inc.*, 938 F.2d 986, 993-94 (9th Cir. 1991).

## III.   PLAINTIFF'S PENDING REQUESTS

On February 28, 2006, plaintiff filed a document styled, "Request for Leave to Amend, Conduct Discovery, for Additional Time and for Evidentiary Hearing."  In that document plaintiff makes various requests, including "additional time to respond to any extrinsic evidence, should the court not sustain the objection that the defendants [*sic*] motion is untimely and considers any extrinsic evidence construing the motion in some alternative manner" as well as a request for an evidentiary hearing.  By this request, it appears that plaintiff intends to interpose an additional objection to the timeliness of defendant's motion to dismiss.  It also appears that plaintiff wishes leave to conduct discovery in order to allege additional jurisdictional bases for maintaining this action in federal court.

"To maintain an action in federal court, an actual case or controversy must exist, and discovery may not be used to conduct a fishing expedition in hopes that some fact supporting an allegation will be uncovered."  *Inst. for Wildlife Prot. v. Notrton*, 337 F. Supp. 2d 1223, 1226 (D. Wash. 2004) (citing *Rivera v. NIBCO, Inc.*, 364 F.3d 2057, 1072 (9th Cir. 2004)). Further, federal subject matter jurisdiction must exist at the time the action is commenced and must be

1   disclosed in the complaint.  Otherwise the court has no power but to dismiss the action.

2   *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380

3   (9th Cir. 1988).

4       For the reasons set forth above, plaintiff's February 28, 2006, request is denied.

5   **IV.    CONCLUSION**

6       In accordance with the foregoing, IT IS ORDERED that:

7       1. Plaintiff's February 28, 2007, "Request for Leave to Amend, Conduct Discovery, for

8   Additional Time and for Evidentiary Hearing" is denied; and

9       2.  Defendant's Request for Judicial Notice is denied.

10       Further, IT IS RECOMMENDED that:

11       1.  Defendant's motion to dismiss be granted as to all defendants; and

12       2. The Clerk be directed to close this case.

13       These findings and recommendations are submitted to the United States District

14   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

15   after being served with these findings and recommendations, plaintiff may file written objections

16   with the court.  Such a document should be captioned "Objections to Magistrate Judge's

17   Findings and Recommendations."  Any reply to the objections shall be served and filed within

18   ten (10) days after service of the objections.  Failure to file objections within the specified time

19   may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455

20   (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

21   DATED:   May 18, 2007.

22

23                  EDMUND F. BRENNAN

24                  UNITED STATES MAGISTRATE JUDGE

25

26